(C. D. 1035)

B. A. McKenzie & Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided November 20, 1946)

Lawrence & Tuttle (George R. Tuttle and Chas. J. Evans of counsel) for the plaintiff.
Paul P. Rao, Assistant Attorney General (Daniel I. Auster and Arthur R. Martoccia, special attorneys), for the defendant.

Before TILSON and KINCHELOE, Judges; LAWRENCE, J., not participating

TILSON, Judge: The merchandise involved in this suit against the United States is described on the invoice as "1 only 108″ Inserted Tooth Cut-off Saw." The collector classified the merchandise as manufactures of metal, not specially provided for, under paragraph 397 of the Tariff Act of 1930, and assessed duty thereon at the rate of 45 per centum ad valorem.

Plaintiff claims said merchandise to be properly dutiable at only 20 per centum ad valorem under paragraph 340 of said act, as circular saws, finished or further advanced then tempered and polished. By amendment, claim is also made for duty at 20 per centum under paragraph 304 as sheets and plates and steel not specially provided for, valued above 16 cents per pound, and in addition thereto, one-fourth of 1 cent per pound as steel circular saw plates.

At the trial counsel for the plaintiff introduced the testimony of one witness who had been for the past 10 years sales manager for Spear and Jackson Saw Co. of Eugene, Oreg. He testified that the imported merchandise, as imported from Canada, "was prepared to a point where we could continue to manufacture it in Eugene. It was manufactured from this large piece of steel, was hardened, tempered, ground, polished, and balanced"; that the eye had been definitely swept out to exactly 2 inches; that the eye is the center hole that fits on the arbor; and that there were two pinholes 1 inch in diameter drilled on a 9-inch circle for the specific arbor it was to run on. The witness gave further testimony as follows:

In the manufacture of large cut-off saws it is necessary to grind them a number of times, and to return them to the anvil for hammering, and in that grinding operation the saw muds up a good deal. The stone is a natural sandstone and runs slowly. We clean them and polish them a number of times during the manufacture.

\*      \*      \*      \*      \*      \*      \*

That process of hammering consists of tensioning the saw so that the rim of the saw would remain tight, or rigid, when the saw was revolving at a rim speed of 15,500 feet. The centrifugal force of this big body of steel inclines to stretch the steel and we have to hammer a dish into the saw so it will break through. \*  \*  \* This hammering has to be done with gauges, and is measured very carefully, and when the saw comes up to speed it will be in a straight, flat plane

so it will go through the wood.  *  *  *  the saw had to receive 164 uniformly spaced slots in it, so as to be ready for a saw.   It had to have those slots in order to receive inserted teeth which we put into the saw later.  *  *  *   There is a roughness around the edge of the saw.   In this particular case this roughness had to be ground off and the slots had to be made ground out so they could be milled here without any additional waste of metal, or taking of an excessive amount of metal off any particular place, because you understand the saw was balanced in Canada, and the saw weighing one thousand pounds, which would become out of balance, would be a dangerous thing and unsatisfactory.

The witness further stated that the diameter of the finished saw was 108 inches, but that it was described on the invoice as 103¾ inches, the increased diameter apparently resulting from the insertion of the 164 teeth; that after the merchandise arrived in this country additional work was done upon it, such as bottoming the slots, milling the saw, inserting 164 teeth, and blocking it, at a total cost of $222.   Although the witness stated that the merchandise in its condition as imported would cut wood, he admitted that in the exact condition as imported it was not usable for the purpose for which intended; that as imported it did not contain any inserted teeth, but that it did contain slots; that in order to use the imported article without inserting the teeth, it would have to be hammer-set right and left to make clearance so the saw would not get hot; that in order to do proper cutting they would still have to do some processing, hammering, or something to put it in condition after importation.

In his brief filed herein counsel for the plaintiff contends that the imported merchandise is a circular saw, conceding that it is unfinished, but further advanced than tempered and polished.   Paragraph 340 contains no provision for saws of any kind unfinished.   Therefore, the imported merchandise cannot find classification under that paragraph as an unfinished saw.   Nor are we able to hold that a circular plate of steel in the rim of which has been punched 164 slots for the insertion of 164 teeth, and without which teeth it will not perform the function for which intended, is a saw of any kind, finished. True, the record shows that it has been further advanced than tempered and polished, but that qualification is made applicable to saws and not to steel plates.

The imported merchandise had been specially shaped by hammering and other manufacturing operations to put it in such condition that when revolving at a high rate of speed it would cut through the wood evenly and not get hot, if and when there were inserted in the rim, 164 teeth.   In the exact condition as imported the merchandise would not cut wood at all.   It also had holes drilled in it for attachment to the arbor upon which it was to run, and it was notched with slots in the perimeter so that teeth could be inserted to enable it to perform with its intended efficiency, but until these 164 teeth were

actually inserted, the imported merchandise could not perform the function for which intended, efficiently or otherwise.

Upon the facts and the law, plaintiff's claim for classification under paragraph 340 of the Tariff Act of 1930 must be, and the same is hereby, overruled.

The material portion of paragraph 304, under which claim is made, reads as follows:

PAR. 304. Steel * * * sheets and plates and steel not specially provided for * * * valued above 16 cents per pound, 20 per centum ad valorem: *Provided*, That on steel circular saw plates there shall be levied, collected, and paid an additional duty of one-fourth of 1 cent per pound.

The evidence shows that the imported merchandise is composed of steel; that it is circular in shape and that it is definitely dedicated to the making of a saw. It is therefore a steel circular saw plate, and this fits precisely the description contained in the proviso, above quoted. The shape and form of the imported merchandise bring it well within the definition of a "plate" as given by the lexicographers.

In *United States* v. *Walsh*, 154 Fed. 770, in discussing a proviso to a paragraph of the Tariff Act of 1897, the Circuit Court of Appeals, First Circuit, said:

According to the ordinary rule, a proviso at the close of a section, or of an independent paragraph like that now before us, is to be construed as only limiting, or as being limited by, what precedes it therein.

The rule was also stated by the Supreme Court of the United States in *United States* v. *Dickson*, 15 Pet., 141, 165, as follows:

* * * we are led to the general rule of law which has always prevailed, and become consecrated almost as a maxim in the interpretation of statutes, that where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception, must establish it as being within the words as well as within the reason thereof.

The general rule was concisely stated in *Wheelock* v. *United States*, T. D. 22708, by Fischer, Judge, as follows:

The uniform construction of statutes has been that a proviso is limited to the particular paragraph of which it forms part, unless by the express language thereof the legislature provided for a more extended application.

Under the above authorities the proviso to paragraph 304 for "steel circular saw plates" must be limited to the steel plates which precede it in the same paragraph of which it forms a part. The words of the proviso to paragraph 304 appear to evidence a determination on the part of the Congress to make certain that steel circular saw plates should be classified under the provision for steel plates in said para-

graph 304, and nowhere else. In the construction of paragraph 304 the courts have generally considered and treated it as a "material" paragraph, as distinguished from a paragraph dealing with articles, finished or unfinished, but by the proviso thereto, the Congress has left no doubt as to its intention to make dutiable thereunder steel circular saw plates, like the one here in question, whether they be considered and treated as mere material or otherwise. That the provision for steel circular saw plates in paragraph 304 is more specific than the provision for manufactures of metal, not specially provided for, in paragraph 397, under which classification was made, does not appear to be open to doubt.

In *Herman Boker* v. *United States*, T. D. 28625, the merchandise there under consideration consisted of circular steel plates measuring 16 inches in diameter and .078 inch in thickness. These circular steel plates were classified as "steel saw plates" under paragraphs 135 and 141 of the Tariff Act of 1897. It was shown that these steel plates after importation were to be used as the end pieces of spools or reels on which wire was to be wound, a use entirely foreign to that of a saw. In holding these steel plates to be circular saw plates, Judge Fischer, speaking for the court, said:

\* \* \* The question is, Have they the necessary qualities and characteristics which saw plates must possess in order to be so designated? We have nothing to do with their ultimate use after importation. *Jessup* v. *Cooper* (46 Fed. Rep. 186) and *Goodwin* v. *United States* (66 Fed. Rep. 739). It only remains to determine whether the article as imported does possess such character as would upon proper examination indicate and determine its general use. In *Worthington* v. *Robbins* (139 U. S., 337) it was held that, to be dutiable as "watch materials", the article when imported must be in such form of manufacture as to show its adaptation to the making of watches. The witnesses for the Government have testified that the articles imported are adapted to the manufacture of circular saws. In size, shape, general finish, and quality of steel, they testify that the plates correspond to that of circular-saw plates. An analysis made shows that these plates will take a temper; and as this permits their use as plates for saws, and as in all other particulars they resemble and correspond to what are known and imported generally for such use, we find that the articles are in fact steel circular-saw plates and hold that they are properly dutiable as assessed.

For the reasons stated and following the authorities cited, we hold the merchandise invoiced as "1 only 108″ Inserted Tooth Cut-off Saw" to be properly dutiable under paragraph 304 of the Tariff Act of 1930, at the rate of 20 per centum ad valorem, plus one-fourth of 1 cent per pound. All other claims are overruled. Judgment will be rendered accordingly.